J. Gordon BETZ; David E. Giorgi, Individually and as Trustee of the David E. Giorgi Family Trust; Anthony Guntermann, an individual; Harry H. Holthusen, an individual; J. Harold Peterson, Jr., an individual; John S. Rathborne, an individual, Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for HomeFed Bank, F.S.B., Defendant–Appellee.

No. 95–55259.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1996.

Decided Oct. 30, 1996.

William H. Lancaster and Ralph W. Tarr, Andrews & Kurth, Los Angeles, CA, for plaintiffs-appellants.

Mitchell Plave, Washington, D.C., and Tina Pivonka, Schall, Boudreau & Gore, San Diego, CA, for defendant-appellee.

Before WIGGINS, DAVID R. THOMPSON and TROTT, Circuit Judges.

## OPINION

DAVID R. THOMPSON, Circuit Judge:

Former directors of the failed HomeFed Bank, F.S.B. (the directors), appeal the dis-

trict court's summary judgment in favor of the Resolution Trust Corporation (RTC) in the directors' action to require the RTC to treat their withheld directors' fee accounts as deposits with the bank. The RTC determined, and the district court held, that the accounts were not "deposits" within the meaning of 12 U.S.C. § 1813(*l*). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.[1]

## I

HomeFed Bank, a federal savings institution, entered into written contracts with each of the directors. Pursuant to these contracts, the bank withheld fees ordinarily paid to the directors for services rendered to the bank.[2] The contracts constituted a withheld fee plan (Plan) by which the directors deferred receipt of their fees in order to defer the payment of income taxes on those fees until they retired.

Under the terms of the Plan, HomeFed established "individual memorandum accounts" for each director and every month credited the directors' accounts with their withheld fees plus interest accumulated on the existing balances in the accounts. The bank was obligated to pay the account balances to the directors over a ten-year period following their retirement or attainment of 70 years of age. The directors were allowed to terminate their participation in the Plan and receive their withheld fees and interest, but they could not otherwise withdraw the funds.

The funds reflected by the accounts were not segregated from the bank's assets and no formal trusts were created. Each month HomeFed's accounts payable department debited numbered HomeFed accounts and simultaneously credited the directors' memorandum accounts, recording the entries on the bank's general ledger. The directors received annual statements, in the form of business letters from the supervisor of the accounts payable department, showing the balances of their accounts.

The Plan did not provide for deposit insurance on the memorandum accounts, and HomeFed did not include the accounts in its calculations to determine the amount of deposit assessments—essentially insurance premiums—it was required by statute to pay to the FDIC for insurance on deposits. Nor did the bank or the directors report the fees and interest to the Internal Revenue Service as taxable income.

Two weeks before the bank failed, HomeFed's Board of Directors voted to terminate the Plan and allow each participating director to request payment of his accumulated fees and interest. Each director requested payment, but none received payment before the Office of Thrift Supervision (OTS) placed the bank in receivership on July 6, 1992. On that date, the OTS authorized the formation of a new savings institution and appointed the RTC as receiver and conservator. The RTC, in its corporate capacity, was also responsible for satisfying the deposit insurance obligations owed to the failed HomeFed depositors.

The RTC executed a Purchase and Assumption Agreement (P & A Agreement) with the new savings institution transferring all of HomeFed's deposits to it for full credit of each deposit account. The directors' memorandum accounts were not included in the transfer of these deposits.

The directors filed claims with the RTC for payment of their accounts as deposits. The RTC rejected the claims on the ground that the accounts were not deposits. The RTC determined the directors were unsecured creditors of the bank and advised them to file creditor claims. The directors filed creditor claims and received approximately 72 cents on the dollar for the balances in their memorandum accounts.

---

1. Since the district court's summary judgment in favor of the RTC, the statutory mandate of the RTC has expired and the Federal Deposit Insurance Corporation (FDIC) has succeeded the RTC by statute. 12 U.S.C. §§ 1441(m)(1), 1821a(a)(1). Accordingly, the FDIC has been substituted as the defendant-appellee in this appeal.

2. The contracts provide for the deferral of board fees, consulting fees, "and/or other fees for the contributions of [the directors'] time at regular and special board meetings, as members of various committees, and for otherwise contributing their time and expertise."

The directors then filed suit against the RTC in the district court, contending their accounts were "deposits" and seeking payment in full. The parties agreed that there were no material facts in dispute. The district court granted summary judgment in favor of the RTC, and this appeal followed.

## II

The parties do not agree on what standard we should apply to review the RTC's determination that the directors' accounts were not "deposits" within the meaning of 12 U.S.C. § 1813($l$). The directors contend we should review de novo the RTC's determination. The RTC argues we should apply the abuse of discretion standard under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq.

We need not resolve this dispute because, even applying a de novo standard of review and giving no deference to the SEC's determination, we conclude that the directors' accounts were not deposits; hence, they were properly excluded from the transfer of "deposits" to the new savings institution, and the directors were limited to their recovery as unsecured creditors of the bank.

## III

■ The directors contend that under 12 U.S.C. § 1813($l$) their memorandum accounts were deposits, and as a result they are entitled to payment of them in full. Section 1813($l$)(1) defines a "deposit" in relevant part as:

> the unpaid balance of money or its equivalent received or held by a bank in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account....

The directors argue that the sums recorded in their memorandum accounts were "money or its equivalent" because these sums represented "hard earnings" under

*FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986). In *Philadelphia Gear*, the Supreme Court held that a standby letter of credit backed by a contingent promissory note was not a deposit under section 1813($l$)(1), reasoning in part that Congress established deposit insurance to "safeguard[ ] the assets and 'hard earnings' that businesses and individuals have entrusted to banks" and a letter of credit did not represent hard earnings. *Id.* at 435, 106 S.Ct. at 1936–37.

■ Philadelphia Gear's requirement of "hard earnings" does not mean that all "hard earnings" reflected on a bank's accounts will be treated as "deposits." Even if the money the bank owed the directors could be classified as "hard earnings," the Court in *Philadelphia Gear* made it clear that to create a "deposit," a person or business had to "*surrender* ... assets or hard earnings to the custody of the bank.*" *Id.* at 435, 106 S.Ct. at 1936–37 (emphasis added). "Congress wanted to insure that someone who *put tangible assets into a bank* could always get those assets back." *Id.* (emphasis added). This language indicates that a deposit may only be created when money or its equivalent is "surrendered" or "put into" a bank.

■ The directors did not surrender nor put any assets or earnings into HomeFed. At no time did they transfer anything to the bank; the bank merely withheld fees due them. When the bank did this, with the directors' express agreement, neither it nor the directors then or thereafter treated the accounts as deposits.[3] The bank recorded the fees and interest as liabilities on its general ledger as if they were accounts payable. All record keeping was performed by the accounts payable department of the bank.

Nor were the directors' accounts held in the "usual course of business" as deposits, as required by section 1813($l$)(1). The directors' accounts were created solely for them, for the specialized purpose of enabling them to defer the payment of income taxes. And, the bank did not pay deposit insurance assessments on the accounts.

---

**3.** A party's treatment of an account, by itself, is not dispositive in determining whether the account is a deposit. Nevertheless, when a party's treatment of an account is inconsistent with the party's litigation position before the court, we are inclined to give more weight to the party's treatment of the account than to his litigation posture.

The contracts between the bank and the directors were akin to contracts for services under which the provider is to be paid in increments after performance. The directors' performance under their contracts created an irrevocable obligation on the part of the bank to pay, but the bank was not acting as a depository institution. Rather, it was acting as an ordinary party to a contract who agrees to pay for services rendered under a deferred payment schedule.

The accounts maintained by the bank for deferred payment could have been set up as trust fund accounts. Trust fund accounts may be treated as deposits under 12 U.S.C. § 1813($l$)(3). HomeFed, however, did not hold the accounts in trust. If it had, it would have been required by law to segregate the funds from its general assets due to the bank's fiduciary duty as a trustee. *See* 12 U.S.C. § 1464(n). It did not do this. Moreover, because there were no trusts created, the Plan does not meet the statutory requirements of a deferred compensation plan under 26 U.S.C. § 401(a).

Finally, neither the bank nor the directors reported the fees, or the interest earned on the memorandum accounts, to the Internal Revenue Service as part of their income.

Our holding is not inconsistent with *FDIC v. European American Bank & Trust Co.*, 576 F.Supp. 950 (S.D.N.Y.1983). In that case, the district court held that electronically registered transfers of money among an association of banking institutions were deposits on the day of registration, even though the money was not actually received until the next day. *Id.* at 954–56. The court reasoned in part that the electronic messages represented deposits because the banks were irrevocably obliged to pay an account holder from the moment of electronic registration. *Id.* at 955.

Contrary to the directors' contention, *European American Bank & Trust Co.* does not stand for the proposition that a deposit is created any time a bank has an irrevocable obligation to pay. Such a rule would eviscerate the distinction between a bank's deposits and its accounts payable. The irrevocable obligations in *European American Bank & Trust Co.* stemmed from the funds themselves, which were clearly deposits on the day of actual receipt. There were unambiguous surrenders of money to the bank to be held as deposits, and the only issue before the court was whether the deposits were created the instant the impending surrender was electronically registered or when the money was actually delivered.

Here, the bank had an irrevocable obligation to pay the fees and interest to the directors, but it was not connected to any money deposited in the bank. Unlike the bank in *European American Bank & Trust Co.*, HomeFed *never* received any money or its equivalent from the directors; it received only the directors' performance of their contractual obligations. The bank's irrevocable obligation stemmed not from actual or impending deposits, but from the withholding of earned fees which created accounts payable.

We conclude the RTC properly determined, and the district court properly held, that the directors' accounts were not "deposits" under 12 U.S.C. § 1813($l$).[4]

AFFIRMED.

---

**4.** Our holding that the directors' accounts were not deposits means the directors were not, as they allege, third-party beneficiaries of the P & A Agreement. By their own admission, the directors have to be depositors of the bank to be third-party beneficiaries of the P & A Agreement.